FILED

2022 Feb-23  PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL CARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:20-cv-01151-LCB-SGC |
| | ) | |
| JEFFERSON DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

The plaintiff, Michael Carson, filed a *pro se* amended complaint under 42

U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the

United States while incarcerated in Limestone Correctional Facility ("Limestone")

in Harvest, Alabama.   (Doc. 10).[1]   The remaining defendants are former

Commissioner Jefferson Dunn, as well as Wardens William Streeter, Scarlette

Robinson, and Deborah Toney.[2]  (Doc. 10 at 2-4).  Carson claims these defendants

failed to protect him from contracting COVID-19, in deliberate indifference to his

safety. (Docs. 10, 11, 12).  Carson's amended complaint seeks solely injunctive

relief; it asks the court to reduce overcrowding, separate gangs from the general

---

[1] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF
electronic document system and appear in the following format: (Doc. __ at __).

[2] All other claims and defendants were dismissed on February 5, 2021.  (Docs. 11 and 12).

population,   and hold the Alabama Department of Corrections ("ADOC") accountable.  (Doc. 10 at 9).

The amended complaint is before a magistrate judge for a preliminary report and recommendation.  *See* 28 U.S.C. § 636(b)(1); *McCarthy v. Bronson*, 500 U.S. 136 (1991).  As explained below, the pending motion for summary judgment is due to be granted in its entirety.

## I.      PROCEDURAL HISTORY

On February 8, 2021, the court ordered the defendants to file a special report addressing Carson's factual allegations.  (Doc. 13).  The order noted the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure*.

On May 24, 2021, the defendants filed a special report, supplemented by affidavits and other evidence.  (Doc. 23).  The court notified the parties it would construe the special report as a motion for summary judgment and ordered Carson to submit any response—by filing affidavits or other materials—within 21 days. (Doc. 24).  The order also advised Carson of the consequences of any default or failure to comply with Rule 56.  (Doc. 24).  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Carson sought and received discovery, including his own

medical records.   (Docs. 25-29).   However, Carson has not responded to the defendants' motion for summary judgment.

## II.    STANDARD OF REVIEW

Because the court has construed the defendants' special report as a motion for summary judgment, Rule 56 governs.   Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000).   The moving party bears the burden to establish prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he should prevail as a matter of law.   *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).   Unless the plaintiff, who carries the ultimate burden of proving his action, can show some evidence with respect to each element of his claim, all other issues of fact are immaterial, and the movant is entitled to judgment as a matter of law.   *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990).   As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.   "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial."   Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Courts construe *pro se* complaints more liberally than pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed.  *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

## III.   SUMMARY JUDGMENT FACTS

Carson alleges Wardens Streeter, Robinson, and Toney deliberately allowed "Daudy," a COVID-19 positive inmate, into Limestone.  (Doc. 10 at 7, 10-11). Daudy was placed in the honor dorm, where he infected inmates Johnny Terry and Kevin Roper, both of whom died from the virus.  (Doc. 10 at 7).  Daudy also infected inmate Bill Kemp, who lives in the same dorm as Carson, Mark Archer, and Fred

Wroten.[3]  (Doc. 10 at 7).  Carson was quarantined, but the wardens allowed inmates to freely access the quarantine dorm.  (Doc. 10 at 7-8).

Among the evidence submitted by the defendants is the declaration of Ruth Naglich, the Associate Commissioner for Health Services for ADOC.  (Doc. 23-1). Naglich's declaration describes procedures implemented by ADOC's Office of Health Services ("OHS") to prevent or mitigate the introduction and spread of COVID in the state's prisons, including Limestone.  (Doc. 23-1).  The measures described by Naglich include ADOC's adoption of guidance from the Centers for Disease Control and Prevention regarding cleaning and disinfecting facilities, as well as implementing a tiered quarantine system depending on the level of exposure. (Doc. 23-1 at 2-3).  ADOC also temporarily stopped accepting new inmates into the system and halted outside visitation in an effort to reduce the introduction of COVID-19 into the prisons.  (*Id.* at 4-15).  When ADOC resumed prisoner intake, it implemented a pre-screening and testing procedure before inmates could be transferred into the system.  (*Id.*).  Additionally, ADOC provided masks and antibacterial soap, as well as education about the symptoms and methods to reduce the spread of COVID-19, to inmates and employees.  (*Id.*).

---

[3] Carson named "Fred Woten" as an infected inmate; however, the defendants clarified this inmate's last name is "Wroten."  (Doc. 23-5 at 6 n.6).

The defendants also submitted a declaration from Taylor McElroy, a registered nurse who serves as Health Services Administrator at Limestone. (Doc 21-12). McElroy avers Carson has never demonstrated any signs or symptoms of COVID, sought to be tested for COVID, or sought any medical care due to COVID. (*Id.*). Contrary to Carson's contention that overcrowding at Limestone exacerbated problems with the defendants' approach to COVID, Warden Toney avers the prison is currently at 74% capacity. (Doc. 23-4 at 9). Toney also notes Carson's complaints concerning the COVID "lockdown" of his dorm demonstrates Limestone officials followed protocol to prevent spreading the virus. (*Id.* at 10).

Regarding Carson's assertions concerning Daudy, Warden Streeter avers no inmate with that last name has been housed at Limestone during the relevant time period. (Doc. 23-5 at 3). Streeter does identify two Limestone inmates with the last name "Dowdy." (*Id.* at 3 n.2). However, neither of them had been housed with inmate Bill Kemp before Kemp shared a dorm with Carson. (Doc. 23-5 at 3-4, 7). Of the other inmates Carson identified as infected by Daudy, only Johnny Terry had been housed with Kemp in the honor dorm.[4] (Doc. 23-5 at 6). Carson's medical records show he declined COVID vaccination in June 2021. (Doc. 30-1 at 3).

---

[4] The defendants submitted the relevant bed assignment histories. From March through April 2020, Bill Kemp lived in B-Dorm. (Doc. 23-5 at 4-5). He moved between A- and B-Dorms aside from October 2020, when he was housed in H-Dorm for several weeks. (Doc. 23-7 at 2-3). Kevin Roper resided in A-Dorm until his death in early October 2020. (Doc. 23-10). Johnny Terry moved between A-Dorm and H-Dorm until his death, also in early October 2020. (Doc. 23-11). Of the "Dowdys" identified by the defendants, Joseph Dowdy transferred to Limestone on August

## IV.   ANALYSIS

The Eighth Amendment requires prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). A prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828-29.

To survive summary judgment on a conditions of confinement claim, a plaintiff must satisfy both an objective and a subjective inquiry. *Farmer,* 511 U.S. at 834; *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) An inmate must first show an objectively substantial risk of serious harm exists. *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015). An objectively substantial risk requires a "strong likelihood" of injury "rather than a mere possibility." *Id*. (citations omitted). The Eleventh Circuit has acknowledged "the risk of COVID-19

---

23, 2019, and resided in L-Dorm during the relevant time period; he did spend part of one day in A-Dorm on October 27, 2020, which was after both Terry and Roper died. (Doc. 23-5 at 7). Barry Dowdy arrived at Limestone in January 2019 and was housed in the honor dorm until he transferred to A-Dorm on August 23, 2020. (Doc. 23-5 at 8).

satisfies this requirement." *Swain v. Junio*, 961 F.3d 1276, 1285 (11th Cir. 2020).

As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837–38; *see also Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew" of the excessive risk). To make this showing, the plaintiff must prove "the defendants' deliberate indifference" to a risk by making three sub-showings: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016) (quotation omitted). A plaintiff satisfies the final prong of this inquiry by producing evidence "the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Caldwell*, 748 F.3d at 1099 (citations, alterations, and internal quotations omitted).

Clearly, the defendants have "subjective knowledge" of the risks that COVID-19 poses. *See, e.g., Swain*, 961 F.3d at 1285. Therefore, the inquiry here "hinges on whether the defendants 'disregard[ed]' the risk 'by conduct that is more than mere negligence.'" *Id*. (citing *Lane*, 835 F.3d at 1308); *see also Helling v. McKinney*, 509 U.S. 25, 35-37 (1993) (a plaintiff may state an Eighth Amendment claim against prison officials based on conditions posing "an unreasonable risk of serious damage

to his future health," if he shows "he himself is being exposed" to the health risk and that "prison authorities are ignoring the possible dangers posed by exposure"). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety . . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

Carson contends allowing a COVID-positive inmate to be transferred into Limestone and housing him in a crowded dorm proves the defendants' deliberate indifference. Carson also asserts the defendants failed to adopt sufficient precautions to protect him from COVID. The problems for Carson are threefold. First, he has produced no evidence that any defendant has ignored the risk associated with COVID. Whether the defendants have exhibited "a sufficiently culpable state of mind" requires a court to examine "the defendants' entire course of conduct." *Swain*, 961 F.3d at 1287-88 (citing *Farmer*, 511 U.S. at 834). Here, the documentary evidence submitted by the defendants demonstrates prison officials have not

disregarded the risk of COVID but, rather, have taken multiple steps to prevent its unmitigated spread through the prison system.

Next, Carson does not dispute the availability of a COVID vaccine, which he has refused.  (Doc. 30-1 at 3).  Whatever Carson's reasons for refusal, the vaccine's availability demonstrates the defendants are not acting in deliberate indifference to his health and safety.  *See, e.g., United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccinations safe and effective."); *Wyckoff v. Warden, Belmont Corr. Inst.*, 2021 WL 2633085, *2 (S.D. Ohio June 25, 2021) (in deliberate indifference action, finding "prison officials have acted reasonably by offering the COVID-19 vaccine to more than 95% of Ohio's prison population.").

Finally, Carson fails to provide any factual basis for his claim the defendants knowingly allowed a COVID-positive inmate to enter Limestone and housed him in a crowded dorm.[5]  Instead, the evidence supports a contrary finding – no inmate named "Daudy" transferred to Limestone during the relevant time period.  Of the two inmates with similar last names, their presence at Limestone predates the onset

---

[5] Carson has not rebutted Toney's averment that Limestone is at 74% capacity.  (Doc. 23-4 at 9).

of the pandemic.  Carson offers no evidence to rebut the defendants' well-supported

assertion that "inmate Daudy" does not exist.

Carson also does not refute the numerous steps taken by the defendants to

protect the prison population from COVID and does not deny that he has declined

vaccination.  Because the defendants have taken multiple steps to protect prisoners

and have offered a vaccine against the very disease Carson contends they must

protect him from, he cannot show deliberate indifference.  "[P]rison officials who

actually knew of a substantial risk to inmate health or safety may be found free from

liability if they responded reasonably to the risk, even if the harm ultimately was not

averted."  *Farmer*, 511 U.S. at 844; *see also Wilson v. Seiter*, 501 U.S. 294, 303,

(1991) ("the 'wantonness' of conduct" does not "depend[ ] upon its effect upon the

prisoner").  Here, the defendants took reasonable actions to mitigate the spread of

the virus.  (*See, e.g.,* Doc. 23-1 at 4-15).  The Eleventh Circuit has previously stated

"[w]e simply cannot conclude that, when faced with a perfect storm of a contagious

virus and the space constraints inherent in a correctional facility, the defendants here

acted unreasonably by 'doing their best.'"  *Swain*, 961 F.3d at 1289.  Carson fails to

demonstrate any basis for this court to find otherwise.

When "the moving party has carried its burden under Rule 56[ ], its opponent

must do more than simply show that there is some metaphysical doubt as to the

material facts . . . .  Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Because the defendants' motion for summary judgment is due to be granted on the merits of Carson's claims, it is unnecessary to address the defendants' other arguments.

## V.   RECOMMENDATION

For all of the foregoing reasons, there are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law. Accordingly, the undersigned **RECOMMENDS** the defendants' motion for summary judgment (Doc. 23) be **GRANTED**, and Carson's remaining claims be **DISMISSED WITH PREJUDICE**.

## VI.   NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within 14 calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations,

present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

Upon receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

**DONE** this 23rd day of February, 2022.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE